**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

INVISASOX, LLC,

Plaintiff,

v. Case No: 8:18-cv-2639-T-17GW

EVERYTHNG LEGWEAR, LLC and
FRANNIE GIRL PRODUCTS, INC.,

Defendants.

_________________________________________ /

**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on the motion of Defendants Everything Legwear, LLC and Frannie Girl Products, Inc. (collectively, "Everything Legwear") for partial summary judgment. (Doc. 38). Plaintiff Invisasox, LLC responded in opposition to the motion. (Doc. 43). Everything Legwear filed a reply memorandum. (Docs. 57; 61). With the Court's permission, both sides filed certain materials under seal. (Docs. 54; 58-62). Upon review of the motion, response, reply, court file, and record, the Court finds as follows:

**Background**

This case presents a trademark dispute between sellers of "no-show" hosiery. In 2011, Defendant Frannie Girl obtained federal trademark registration for the mark "InvisaSock" for products identified as "[h]osiery; specifically, a stocking that cannot be observed in public when worn with women's dress shoes, in class 25 (U.S.

CLS. 22 and 39)." (Docs. 38 at 2; 38 at 2). The registered mark consists only of the indicated letters with no particular font, style, size, or color. (*Id.*).[1] Frannie Girl licensed the InvisaSock mark to Everything Legwear, LLC. (Doc. 38-3 at ¶ 2). Invisasox attempted to register INVISASOX as a mark for its products, but the Patent and Trademark Office rejected its application on grounds of likelihood of confusion with Everything Legwear's mark. (Docs. 38-6; 39 at ¶¶ 4-6).

Invisasox nevertheless used INVISASOX to identify its line of no-show socks beginning in November 2016. (Doc. 39 at ¶ 4). After Everything Legwear demanded that Invisasox cease using the INVISASOX mark, Invisasox filed this action seeking a declaratory judgment that its mark does not infringe Everything Legwear's mark. (*Id.*; Doc. 38-4). Everything Legwear counterclaimed, asserting counts claims for (1) Trademark Infringement under 15 U.S.C. § 1114(1), (2) Unfair Competition: False Designations of Origin under 15 U.S.C. § 1125(a)(1)(A), and (3) Unfair Competition: Trademark Dilution under 15 U.S.C. § 1125(c). (Doc. 14 at 13-20). Everything Legwear has moved for partial summary judgment on the first and second counts of its counterclaim, seeking entry of a permanent injunction.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

[1] While both Everything Legwear and Invisasox refer to their respective marks as "INVISASOCK" and "INVISASOX," it appears from the record that in the actual marketplace, Everything Legwear's mark is presented as "InvisaSock," and the Court will therefore use this form. *See* (Docs. 38-9; 38-16).

matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations and evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Where, as here, the moving party is a counterclaimant who will bear the burden of proof on an issue at trial, demonstrating the absence of a genuine issue of material fact requires the submission of credible evidence that, if not controverted at trial, would entitle the moving party to a directed verdict. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Only if the moving party meets that burden is the non-moving party required to produce evidence in opposition. *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Summary judgment should be denied unless, on the record evidence presented, a

reasonable jury could not return a verdict for the non-moving party. *Id.*; *see also Fitzpatrick*, 2 F.3d at 1115-16.

**Analysis**

Everything Legwear, as the party seeking to establish trademark infringement under 15 U.S.C. § 1114(1), must prove (1) a valid registered trademark in use prior to the alleged infringing use, and (2) a likelihood of confusion on the part of customers as to the source, affiliation or sponsorship of the parties' products. *See Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *White v. Toscano, Inc.,* No. 8:04-CV-2438-T-26MSS, 2005 WL 8160219, at *2 (M.D. Fla. Oct. 11, 2005). To establish its claim for unfair competition under 15 U.S.C. § 1125(a)(1)(A), Everything Legwear must similarly prove that Invisasox adopted a mark that created a likelihood of confusion as to the source of the goods. *See Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010). Thus, the analysis under both statutes is the same. *See id.* at 773 n.5.

***Invisasox's Abandonment Defense***

It is undisputed that Everything Legwear registered and used the InvisaSock mark in commerce prior to Invisasox's first use of INVISASOX and that Invisasox continues to use its mark. Before turning to the issue of likelihood of confusion, the Court must address Invisasox's argument that Everything Legwear has abandoned its mark, rendering it invalid and incapable of enforcement. (Doc. 43 at 4-6). A mark is deemed abandoned if the owner (1) has stopped using the mark in commerce and (2) does not intend to resume its use. *Cumulus Media, Inc. v. Clear*

*Channel Comm., Inc.*, 304 F.3d 1167, 1173-74 (11th Cir. 2002). Three years of consecutive non-use raises a rebuttable presumption of intent to abandon the mark. *Id*. at 1174 (citing 15 U.S.C. § 1127). Abandonment is an affirmative defense on which Invisasox bears the "strict" burden of proof. *Id*.

Everything Legwear has presented evidence that it has used the InvisaSock mark in commerce "without any break in time since April 1, 2001." (Doc. 38-3 at ¶ 3). Invisasock, on the other hand, has presented no contrary evidence. *See* (Doc. 43 at 5-6). Invisasox argues only that Everything Legwear's sales and its advertising expenses related to its InvisaSock mark since 2014 have been *de minimis*. (*Id*.). But Invisasox fails to cite evidence or authority showing that Everything Legwear's continuous use of the mark has not been a "bona fide use . . . made in the ordinary course of trade," or that its use was "merely to reserve a right in a mark." *Cumulus Media*, 304 F.3d at 1174. Accordingly, on the current record, Inivsasox's abandonment defense would not prevent entry of summary judgment for Everything Legwear if it were otherwise entitled to it.

***Likelihood of Confusion***

Overview

The Eleventh Circuit uses a seven-factor framework for analyzing whether the required likelihood of confusion exists. The factors are: (1) the type and strength of the allegedly infringed mark, (2) the similarity of the two marks, (3) the similarity of the goods at issue, (4) the similarity of the parties' retail outlets or "channels of trade" and their customers, (5) the similarity of advertising media used

by the parties, (6) the alleged infringer's intent, and (7) the existence of actual confusion on the part of the consuming public. *See, e.g.*, *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1256-57 (11th Cir. 2016).

Evaluating these factors is not an arithmetical process in which each of them is decided for one side or the other, and the party with the most factors wins. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 649-50 (11th Cir. 2007). Rather, the court must decide the weight to accord each factor, consider the unique facts of each case, and decide where the "overall balance" lies. *Id*. In other words, the factors are merely a guide to help inform the court's decision on the ultimate issue: whether it is likely (that is, probable, not merely possible) that an "appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Id*. at 650-51 (quoting *New Sensor Corp. v. CE Distribution LLC,* 303 F. Supp. 2d 304, 310–11 (E.D.N.Y.2004)). In deciding that bottom line issue, evidence of actual confusion is the most important factor, and the strength of the mark is the second most important. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC,* 605 F.3d 931, 936, 938 (11th Cir. 2010).

The issue of likelihood of confusion presents a question of fact. *E.g., Times Newspapers, Ltd. v. Times Pub. Co.*, No. 92-1435-CIV-T-15(A), 1993 WL 120614, at *6 n.6 (M.D. Fla. Feb. 16, 1993); *see also Custom Mfg*., 508 F.3d at 649 (noting that likelihood of confusion is a "fact-intensive inquiry"). Everything Legwear argues

that it is entitled to summary judgment on the ground that every one of the relevant factors weighs "heavily and decidedly" in its favor. (Doc. 38 at 12).

Type and Strength of Mark

This factor assesses the mark's inherent or conceptual strength and its actual strength in the marketplace. *Florida Int'l Univ*, 830 F.3d at 1258-59. Inherent strength refers to the "relationship between the name and the service or good it describes," and is evaluated along a spectrum running from generic (the weakest) to arbitrary or fanciful (the strongest). *Frehling Enters.*, 192 F.3d at 1335. As the court explained in *White*, 2005 WL 8160219, at *3:

> The four categories of marks are: (1) generic, a term that refers to the nature of a product (e.g. APPLE for apples); (2) descriptive, a term that describes a characteristic or quality about the product (e.g. APPLE for apple-flavored drinks); (3) suggestive, a term that suggests some characteristic about a product, but requires the consumer to use his or her imagination to determine the nature of the product (e.g. APPLE for red dye); and (4) arbitrary, a term that bears no relationship to the product (e.g. APPLE for computers)

Everything Legwear argues that its InvisaSock trademark is "suggestive" because it takes an act of imagination to deduce from the trademark the nature of the goods. (Doc. 38 at 5-6). The Court agrees.

It also appears that Everything Legwear's InvisaSock registered mark acquired "incontestable" status when the mark's owner, Frannie Girl, filed an affidavit with the Patent and Trademark Office attesting that the mark had been in use for five consecutive years and was still in use. (Doc. 38-12). Incontestable

status enhances the mark's strength, making it presumptively a relatively strong mark, obviating the need for Everything Legwear to present evidence of strength in the marketplace. *See Florida Int'l Univ.*, 830 F.3d at 1257.

Invisasox argues that Everything Legwear's mark does not in fact have incontestable status because the mark was not used in commerce for the requisite five years beyond a "casual and nominal" use. (Doc. 43 at 9-10). The Court rejects this argument for the same reason it rejected Inivisasox's abandonment argument – it is unsupported by the record evidence or any legal authority. This factor accordingly weighs in favor of a likelihood of confusion.

Actual Confusion

As noted above, evidence of actual confusion is often considered the most important of the seven factors. Conversely, a failure to produce evidence of actual confusion weighs against a finding of likelihood of confusion. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.,* 921 F.3d 1343, 1362 (11th Cir. 2019) ("If consumers have been exposed to two allegedly similar trademarks in the marketplace for an adequate period of time and no actual confusion is detected either by survey or in actual reported instances of confusion, that can be powerful indication that the junior trademark does not cause a meaningful likelihood of confusion.") (quoting *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999)); *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999) ("Following Eleventh Circuit guidance, the Court must give substantial weight to the fact that the Plaintiff is unable, at this time, to prove actual confusion.").

Evidence of actual confusion must show who was confused about what, and to what degree. *See, e.g.*, *Most Worshipful Nat'l Grand Lodge, Free & Accepted Ancient Yorkrite Masons, Prince Hall Origin Nat'l Compact, U.S.A. v. United Grand Lodge GA AF & AYM, Inc.,* No. 19-13105, 2020 WL 2394019, at *2 (11th Cir. May 12, 2020) ("Actual confusion requires that a 'deceived customer buy[ ] the infringer's product in the belief that . . . it in some way is affiliated with the owner [of the trademark or trade dress].'") (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488 (5th Cir. 1971)); *Fla. Int'l Univ.*, 801 F.3d at 1264 ("Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight, . . . while confusion of actual customers of a business is worthy of substantial weight.") (quoting *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982)).

Everything Legwear argues that "[i]ntended consumers in the marketplace have experienced actual, sustained consumer confusion" between the goods it sells and those of Invisasox. (Doc. 38 at 10). However, it offers no probative evidence that this is so. Instead, Everything Legwear has submitted two pieces of anecdotal evidence, neither of which demonstrates actual confusion.

First, Everything Legwear points to a screen shot depicting two individuals in a 2017 YouTube video discussing Invisasox's products, under which a comment posted by an individual identified only as "Rey B" states: "Goes To Invisisock [sic] Wesbsite For Price Goes To Walmart Womens Socks Compares Prices." (Docs. 38 at 11; 38-13, 38-14). Invisasox challenges this evidence as hearsay. (Doc. 43 at 3-4).

Even if the exhibits are admissible, however, Rey B's identity is unknown, it is unknown whether he or she was a customer of either Invisasox or Everything Legwear, and it is impossible to tell from the comment whether he or she was confused at all and, if so, about what. Only speculation supports Everything Legwear's argument that Rey B "went to Everything Legwear's website instead of Invisasox [sic] website to shop for socks after viewing the promotional YouTube video for Invisasox's socks." (Doc. 38 at 11).

Second, while Everything Legwear does not argue this point in its motion, it has submitted a declaration of Everything Legwear, LLC President Lisa Sizemore apparently describing a different incident of purported confusion (Doc. 38-3 at ¶ 11):

> On or about October 2018, I obtained a true and correct screenshot of a comment by a user who went by the handle, Robbin K., on Everything Legwear's Amazon.com webpage that advertised Everything Legwear's products for sale through the Amazon.com domain. The comment indicated that the user had purchased Everything Legwear's product that was sold under the INVISASOCK brand after viewing a video on the YouTube.com platform for reviewing products marketed under the INVISASOX brand. (Amazon Confusion Comment, Ex.14, pg. 1).

The referenced exhibit, however, is not attached to the declaration, nor does it correspond to any of the exhibits to Everything Legwear's summary judgment motion. The Court is accordingly left with only Ms. Sizemore's second-hand opinion of what the out-of-court comment "indicated." This is inadmissible hearsay and, as with "Rey B," there is no indication who "Robbin K" is, what she was confused about or why she purchased InvisaSock products from Everything Legwear's website "after" viewing a Youtube video touting Invisasox's products. Here, again, only

speculation supports the notion that this constitutes evidence of the required customer confusion. *See White,* 2005 WL 8160219, at *7 (explaining that hearsay assertions, references to documents not in evidence, isolated occurrences, and speculation about the possibility of consumer confusion are insufficient to show actual confusion).

Everything Legwear notes that the failure to produce evidence of actual confusion is not necessarily "fatal" to an infringement case, (Doc. 57 at 4), but it does weigh against a likelihood of confusion.

<u>Similarity of Marks</u>

The similarity of the marks is examined based on the "the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Custom Mfg.*, 508 F.3d at 648 (quoting *Frehling Enters.*, 192 F.3d at 1337). Similarity is "not a binary factor but is a matter of degree." *FCOA, LLC v. Foremost Title & Escrow Services, LLC,* 416 F. Supp. 3d 1381, 1390 (S.D. Fla. 2019) (quoting *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Florida Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 809 F.3d 1171, 1187 (11th Cir. 2015)).

While the overall impression created by the two marks here is similar in some respects, it is not identical. *See, e.g., USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 165 F. Supp. 3d 1256, 1270 (S.D. Fla. 2016) ("The likelihood of confusion is greater when an infringer uses the exact trademark.") (quoting *Turner*

*Greenberg Assoc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004), *aff'd*, 128 F. App'x 755 (11th Cir. 2005)). The two marks are similar in sound, but their visual appearance as actually presented in the marketplace differs due to the distinctive spelling of "SOX" and the fact that Invisasox's mark appears in all capital letters, while Everything Legwear's mark is presented as "InvisaSock." *See* (Docs. 38-9; 38-10; 38-16); *Deltona Transformer Corp. v. Wal-Mart Stores, Inc.*, 115 F. Supp. 2d 1361, 1370 (M.D. Fla. 2000) (noting dissimilarity in font and style of the two marks); *Moore v. Weinstein Co.,* No. 3:09-CV-00166, 2012 WL 1884758, at *38 (M.D. Tenn. May 23, 2012) (explaining that singular versus plural form and difference in typeface did not indicate an intent to "mimic" or show likelihood of confusion with respect to the other mark), *aff'd*, 545 F. App'x 405 (6th Cir. 2013).

As such, while the marks are "similar" to an extent, they are different in other respects, particularly as they are presented to actual consumers in the marketplace. *See Custom Mfg.*, at 508 F.3d at 652 ("[L]iability under the Lanham Act is properly tied to the real-world context in which the alleged trademark use occurs."); *see also Wreal LLC v. Amazon.com, Inc.*, No. 14-21385-CIV-LENARD/GOODMAN, 2015 WL 12550932, at *8 (S.D. Fla. Feb. 3, 2015) (explaining that marks are not to be compared in the abstract, but based on actual presentation and use in commerce), *report and recommendation adopted*, 2015 WL 12550912 (S.D. Fla. Aug. 31, 2015), *aff'd*, 840 F.3d 1244 (11th Cir. 2016). Accordingly, this factor is neutral. *See, e.g., Sovereign Military Hospitaller Order*, 809 F. 3d at 1187 ("Because there are 'both similarities and differences,' we 'cannot say flatly that

either the marks are or are not visually similar.'") (quoting 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:25 (4th ed)).

Similarity of Goods

The third factor asks whether the parties' respective goods are "so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *Florida Int'l Univ.,* 830 F.3d at 1261 (quoting *Frehling Enters.*, 122 F.3d at 1338). The focus is on "'the reasonable belief of the average consumer as to what the likely source of the goods [is].'" *Id.*

Everything Legwear has submitted no evidence on this point other than illustrations and descriptions of the goods themselves. In fact, there appears to be a dispute as to whether Everything Legwear's InvisaSock products include "stockings" or only "socks," and the record is less than clear on this point. *See* (Docs 38 at 7-8; 38-2; 38-3 at ¶¶ 2, 5-6; 38-9). But even if Everything Legwear's InvisaSock line includes only "stockings," its goods and those of Invisasox are sufficiently similar that – considered purely in the abstract – consumers might well believe they would come from the same source, and this factor would be one of Everything Legwear's stronger points in favor of establishing likelihood of confusion. This factor, however, like the others, must be considered not in the abstract, but in the real-life world of the marketplace under the specific circumstances presented here. *See Custom Mfg.*, 508 F.3d at 652. These circumstances include the differences (as well as similarities) in the two marks and the differences in retail outlets discussed below. Similarity of goods may be a

strong point for Everything Legwear considered in the abstract. But Everything Legwear has failed to provide sufficient evidence as to what "reasonable belief . . . the average consumer" would form in a real-world context. *Florida Int'l Univ.,* 830 F.3d at 1261. The Court accordingly views this factor as neutral or weighing only somewhat in Everything Legwear's favor.

Similarity of Channels of Trade and Customers

The only asserted similarity in retail outlets (or "channels of trade") appears to be that both parties sell their goods on the internet. This "proves little, if anything, about the likelihood that consumers will confuse similar marks used on such goods or services." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:53.50 (5th ed.). The fact that Everything Legwear sells its goods on its own website and other websites, while Invisasox sells products only on its own website, cuts against likelihood of confusion. *See* (Doc. 38 at 8-9); *Tana,* 611 F.3d at 778 (explaining that the "similarity" that the two parties maintained websites would dispel rather than cause confusion . . . because the websites are separate and distinct, suggesting two completely unrelated business entities."); *Florida Int'l Univ. Bd. of Trustees v. Florida Nat. Univ., Inc.*, 91 F. Supp. 3d 1265, 1280 (S.D. Fla. 2015) (stating that the fact that both universities advertised on their own respective websites, in addition to several other media sources, made it more likely consumers would believe that the two schools were "distinct enterprises"), *aff'd*, 830 F.3d 1242 (11th Cir. 2016).

Everything Legwear broadly asserts that the two companies "both market and sell socks through the Internet to potential customers who are looking for socks." (Doc. 38 at 8-9). But it offers no specific evidence on these customers, nor does it address the fact that its products, unlike those of Inivsasox, appear to target customers seeking dress or professional wear. *See* (Docs. 38-3 at ¶ 2; 38-9; 38-10). Based on the foregoing, the differences in trade channels and customers cut against likelihood of confusion.

<u>Similarity of Advertising</u>

Everything Legwear argues that there is a "substantial overlap" in advertising media, pointing to the fact that both parties "maintain[ ] and promot[e] their online store to market and sell their goods." (Doc. 38 at 9). For the reasons just discussed in connection with the "retail outlets" factor, the parties' use of separate websites weighs against likelihood of confusion.

<u>Invisasox's intent</u>

Evidence that the alleged infringer adopted its mark "with the intention of deriving a benefit from the [trademark' holder's] business reputation . . . may be enough to justify the inference that there is consuming similarity." *See* (Doc. 38 at 10) (citing *Fla. Int'l Univ.*, 830 F.3d at 1263)). Everything Legwear contends that Invisasox admitted to having adopted the INVISASOX mark despite knowing of the existence of Everything Legwear's mark and its federal registration. (*Id.*).

A "party's state of mind (such as knowledge or intent) is [generally] a question of fact for the factfinder, to be determined after trial." *Chanel,* 931 F.2d at

476. Bad faith in the adoption and use of a trademark normally involves the imitation of packaging material, use of identical code numbers, adopting of similar distribution methods or other efforts by a party to "pass off" its product as that of another. *Tiger Direct, Inc. v. Apple Computer, Inc.*, No. 05-21136CIVLENARD, 2005 WL 1458046, at *20 (S.D. Fla. May 11, 2005).

Everything Legwear presents no direct evidence, such as deposition testimony, regarding Invisasox's intent in adopting and using its mark. It relies instead solely on Invisasox's prior knowledge of the existence of the InvisaSock registered mark. (Doc. 38 at 10). Invisasox's "[p]rior knowledge" of Everything Legwear's trademark "does not *necessarily* give rise to an inference of bad faith and may be consistent with good faith." *Florida Int'l Univ.,* 91 F. Supp. 3d at 1282 (quoting *Michael Caruso and Co., Inc. v. Estefan Enters., Inc.,* 994 F. Supp. 1454, 1462 (S.D.Fla.1998) (emphasis added). Based on the factual circumstances discussed above, for example, Invisasox might have believed that its mark, its goods, its retail outlets, and its customers were sufficiently dissimilar that its use would not infringe. While Invisasox has submitted no evidence on this point, it is not required to do so until and unless Everything Legwear has met its burden of demonstrating the absence of a genuine issue of material fact. *Chanel*, 931 F.2d at 1477. The Court concludes Everything Legwear has not met its burden, particularly given that all legitimate inferences must be drawn in Invisasox's favor. *Shotz*, 344 F.3d at 1164. This factor is neutral with respect to likelihood of confusion.

## Conclusion

The question for summary judgment purposes is whether on the record presented, no reasonable jury could return a verdict for Invisasox. Particularly given that the two most important factors relating to likelihood of confusion – strength of the mark and actual confusion – are a wash, the Court concludes that Everything Legwear has not met its burden. Its motion for partial summary judgment must therefore be denied.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

"Everything Legwear's Dispositive Partial Motion for Summary Judgment and Injunctive Relief and Memorandum of Law in Support" is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of June, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**