UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INVISASOX, LLC,

    Plaintiff,
v.                                                Case No: 8:18-cv-2639-T-60TGW

EVERYTHNG LEGWEAR, LLC and
FRANNIE GIRL PRODUCTS, INC.,

    Defendants.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on "Plaintiff/Counter-Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law," filed on July 27, 2020. (Doc. 69). Defendants Everything Legwear, LLC and Frannie Girl Products, Inc. (collectively, "Everything Legwear") responded in opposition to the motion on August 24, 2020. (Doc. 75). Upon review of the motion, response, court file, and record, the Court finds as follows:

### Background

This case presents a trademark dispute between sellers of "no-show" hosiery. In 2011, Defendant Frannie Girl obtained federal trademark registration for the mark "InvisaSock" for products identified as "[h]osiery; specifically, a stocking that cannot be observed in public when worn with women's dress shoes, in class 25 (U.S. CLS. 22 and 39)." (Docs. 69-4; 75-2; 76 at ¶ 1). The registered mark consists only of

the indicated letters with no particular font, style, size, or color.  (Docs. 69-4; 75-2).[1]  Frannie Girl licensed the InvisaSock mark to Everything Legwear, LLC.  (Doc. 75-24, at ¶ 2).

Invisasox has used "INVISASOX" to identify its line of no-show socks beginning in November 2016.  (Doc. 76, at ¶ 3).  Invisasox also attempted to register INVISASOX as a mark for its products, but in 2018 the Patent and Trademark Office refused to register the mark on grounds of likelihood of confusion with Everything Legwear's mark.  (Doc. 38-7).  After Everything Legwear demanded that Invisasox cease using the INVISASOX mark, Invisasox filed this action seeking a declaratory judgment that its mark does not infringe on Everything Legwear's mark.  (Docs. 1; 69-10).  Everything Legwear counterclaimed, asserting counts for (1) Trademark Infringement under 15 U.S.C. § 1114(1), (2) Unfair Competition: False Designations of Origin under 15 U.S.C. § 1125(a)(1)(A), and (3) Unfair Competition: Trademark Dilution under 15 U.S.C. § 1125(c).  (Doc. 14 at 13-20).

On December 11, 2019, Everything Legwear moved for partial summary judgment on the first and second counts of its counterclaim.  (Doc. 38).  This Court denied that motion.  (Doc. 63).  Invisasox has now moved for summary judgment in its favor.  (Doc. 69).

---

[1] While Everything Legwear and Invisasox refer to their respective marks as "INVISASOCK" and "INVISASOX," it appears from the record that in the actual marketplace, Everything Legwear's mark is often presented as "InvisaSock," and the Court will therefore use this form to better distinguish the two marks.  *See, e.g.,* (Docs. 69-11, at 2; 69-15, at 2).

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations and evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Where the moving party will bear the burden of proof on an issue at trial, as Invisasox will with respect to its abandonment defense, demonstrating the absence of a genuine issue of material fact requires the submission of credible evidence that, if not controverted at trial, would entitle the moving party to a directed verdict on that issue. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Only if

the moving party meets that burden is the non-moving party required to produce evidence in opposition. *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Summary judgment should be denied unless, on the record evidence presented, a reasonable jury could not return a verdict for the non-moving party. *Id.*; *see also Fitzpatrick*, 2 F.3d at 1115-16.

<u>**Analysis**</u>

Everything Legwear, as the party asserting trademark infringement under 15 U.S.C. § 1114(1), must prove (1) a valid registered trademark in use prior to the alleged infringing use, and (2) a likelihood of confusion on the part of customers as to the source, affiliation or sponsorship of the parties' products. *See Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). To establish its claim for unfair competition under 15 U.S.C. § 1125(a)(1)(A), Everything Legwear must similarly prove that Invisasox adopted a mark that created a likelihood of confusion as to the source of the goods. *See Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010). Thus, the analysis under both statutes is the same. *See id.* at 773 n.5. To establish its claim for dilution, Everything Legwear must prove that its mark is "famous" and that Invisasox has taken actions that have impaired the mark's distinctiveness or tarnished its reputation. *See* 15 U.S.C. § 1125(c).

Invisasox argues that it is entitled to summary judgment on the grounds that Everything Legwear has abandoned its InvisaSock mark, that there is no likelihood

of confusion between parties' marks, and that Everything Legwear's mark is not famous and its dilution claim therefore fails.

### *Abandonment*

A mark is deemed abandoned if the owner (1) has stopped using the mark in commerce and (2) does not intend to resume its use. *Cumulus Media, Inc. v. Clear Channel Comm., Inc.*, 304 F.3d 1167, 1173-74 (11th Cir. 2002). Three years of consecutive non-use raises a rebuttable presumption of intent to abandon the mark. *Id.* at 1174 (citing 15 U.S.C. § 1127). Abandonment is an affirmative defense on which Invisasox bears the "strict" burden of proof. *Id.*

Invisasox cites evidence from which it argues Everything Legwear's intent to abandon the InvisaSock mark could be inferred. But there is also contrary evidence. According to the declaration of its president, Lisa Sizemore, Everything Legwear has used the InvisaSock mark in commerce "without any break in time since April 1, 2011." (Doc. 75-24, at ¶ 3). The InvisaSock brand was sold on the web starting in late 2014 or 2015, and sales have occurred under that mark from 2011 to the present. *See, e.g.*, (Docs. 60 at 20-51; 75-14 at 93-94, 124-26, 138-39; 76 at ¶¶ 11, 12).

Invisasock argues that Everything Legwear's sales and its advertising expenses related to its InvisaSock mark since 2014 have been *de minimis*. Although it appears that sales declined dramatically after 2014, the record does not approach that of *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265 (2d Cir. 1974), where the trademark owner sold only 89 bottles of its

product over a 20 year period. *See Health & Sun Research, Inc. v. Australian Gold, LLC*, No. 8:12-cv-2319-T-33MAP, 2013 WL 6038748, at *6-7 (M.D. Fla. Nov. 14, 2003) (distinguishing *La Societe* and noting that "there is no rule of law that the owner of a trademark must reach a particular level of success, measured by the size of the market or by its own level of sales, to avoid abandoning a mark") (internal quotation omitted). Everything Legwear's president testified that she has recently sold thousands of units and has had conversations with retailers who are interested in the brand once a buying opportunity or retail space opens up. (Doc. 75-14 at 125, 138).

Thus, there is at least a triable issue of fact as to whether Everything Legwear's use of its mark has been a "bona fide use . . . made in the ordinary course of trade," rather than a use "merely to reserve a right in a mark." *Cumulus Media*, 304 F.3d at 1174. Accordingly, Invisasox is not entitled to summary judgment based on its abandonment defense.

### *Likelihood of Confusion*

Invisasox next contends that it is entitled to summary judgment on the ground that there is no issue of fact on likelihood of confusion as between the two marks. The Eleventh Circuit uses a seven-factor framework for analyzing whether the required likelihood of confusion exists. *See, e.g.*, *Fla. Int'l Univ. Bd. of Trustees v. Fla Nat'l Univ., Inc.*, 830 F.3d 1242, 1256-57 (11th Cir. 2016). The factors are: (1) the type and strength of the allegedly infringed mark, (2) the similarity of the two marks, (3) the similarity of the goods at issue, (4) the similarity of the parties'

retail outlets or "channels of trade" and their customers, (5) the similarity of advertising media used by the parties, (6) the alleged infringer's intent, and (7) the existence of actual confusion on the part of the consuming public. *Id.*

Evaluating the factors is not an arithmetical process in which each of them is decided for one side or the other, and the party with the most factors wins. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 649-50 (11th Cir. 2007). Rather, the court must decide the weight to accord each factor, consider the unique facts of each case, and decide where the "overall balance" lies on the ultimate issue: whether it is likely that an "appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Id.* at 650-51 (internal quotation omitted). In deciding that bottom line issue, evidence of actual confusion is the most important factor, and the strength of the mark is the second most important. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC,* 605 F.3d 931, 936, 938 (11th Cir. 2010).

<u>Type and Strength of the Mark</u>

The Court concludes that Everything Legwear's InvisaSock mark is suggestive rather than merely descriptive because it takes an act of imagination to deduce from the trademark the nature of the goods. *See, e.g., White v. Toscano, Inc.,* No. 8:04-cv-2438-T-26MSS, 2005 WL 8160219, at *3 (M.D. Fla. Oct. 11, 2005) ("APPLE" as a trademark for red dye would be suggestive). In addition, because it

is deemed "incontestable," it is presumed to be a relatively strong mark. *Fla. Int'l Univ. Bd. of Trustees*, 830 F.3d at 257.

Invisasox has not shown extensive third-party use of the mark itself (as opposed to variations of the mark's component words) that would overcome that presumption and lead the Court to conclude that this factor favors Invisasox. *See Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Florida Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 809 F.3d 1171, 1186 (11th Cir. 2015) ("That other organizations use *parts* of the Sovereign Order's word marks is not persuasive evidence of third-party use."); *see also Phelan Holdings, Inc. v. Rare Hosp. Mgmt., Inc.*, 8:15-CV-2294-T-30TBM, 2017 WL 1135266, at *5 (M.D. Fla. Mar. 27, 2017) (concluding that, notwithstanding third-party use of a portion of the registered mark, given the mark's presumptive strength, this factor weighed in the plaintiff's favor).

Everything Legwear argues for the first time that its infringement claim is based not only on "forward confusion" but also on "reverse confusion."[2] The touchstone of a reverse confusion case remains likelihood of confusion, and courts generally use the same seven factors to evaluate that likelihood. *See, e.g.*, *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV-LENARD/GOODMAN, 2019 WL

---

[2] In a reverse confusion case, customers purchase the *senior* user's products in the mistaken belief that the junior user is the source of the goods. This situation results when a junior user overwhelms the senior user's mark through a large quantity of advertising such that the senior user's mark loses its valuable ability to identify products as those of the senior user. *See generally* 4 *McCarthy on Trademarks and Unfair Competition* § 23:10 (5th ed.).

3890320, at *9 (S.D. Fla. July 26, 2019) (appeal pending); *see also Phelan*, 2017 WL 1135266, at *4-5. Some authority, however, holds that in a reverse confusion case, the first factor focuses on the mark of the *junior* user, while other authority disagrees. *See* 4 *McCarthy on Trademarks and Unfair Competition* § 23:10 (5th ed.). The Eleventh Circuit has not spoken on this issue, and this Court will follow Florida's federal district courts, which have analyzed the strength of the senior user's mark. *See, e.g., Wreal*, 2019 WL 3890320, at *11; *Phelan*, 2017 WL 1135266, at *4. The Court notes, however, that if the proper focus were on the junior user's mark, the Court would reach the same conclusion because Invisasox's mark is also suggestive and therefore a strong mark. Accordingly, this factor weighs in favor of likelihood of confusion.

Actual Confusion

The parties have stipulated that there is no "evidence of actual confusion from a customer who mistakenly bought Inivsasox product confusing it with the InvisaSock product." (Doc. 76 at ¶ 20). Everything Legwear points to two purported examples that the Court has already rejected as not significantly probative on the issue of actual confusion. *See* (Doc. 63 at 9-11). It now adds a 408-page print out presumably from Invisasox's website containing thousands of customer reviews. (Doc. 75-22). Everything Legwear identifies six of these reviews it argues reflect customers mistakenly referring to Everything Legwear's mark. *See* (Doc. 75 at 18). At least three of these, however, if not all six, appear to reflect simple misspellings of "INVISASOX" as opposed to confusion with Everything

Legwear's mark, and they are insufficient without more information to demonstrate actual confusion.  *See Wreal LLC v. Amazon.com, Inc.*, 14-21385-CIV, 2015 WL 12550932, at *14 (S.D. Fla. Feb. 3, 2015), *report and recommendation adopted,* 2015 WL 12550912 (S.D. Fla. Aug. 31, 2015), *aff'd*, 840 F.3d 1244 (11th Cir. 2016).  This factor weighs against a likelihood of confusion.

<u>Similarity of the Marks</u>

As the Court previously observed, the two marks are similar in sound and in the letters that compose them but are also somewhat distinctive in both respects.  (Doc. 63 at 11-12).  The Court also noted evidence that the marks have been presented in the marketplace with differing capitalizations.  (*Id*. at 12-13).  Invisasox's motion focuses on these differences and further argues that Everything Legwear's mark has "consistently" appeared in conjunction with the slogan "Sexy and Invisible Comfort" and has appeared in conjunction with Everything Legwear's house mark.

Everything Legwear responds that while its mark is "sometimes" spelled out as "InvisaSock," it also appears in different formats.  *See* (Docs. 75 at 11; 75-11 at 6; 75-12 at 8).  While on the current record it appears that the "InvisaSock" form is used more often, *see, e.g.,* (Doc. 75-12), neither side has submitted evidence further quantifying or describing the situations in which the different forms are used.  Similarly, Everything Legwear does not dispute that the mark "has appeared" in conjunction with the slogan "Sexy and Invisible Comfort" (Doc. 76 at ¶ 14), but it is unclear how often or with what frequency that is the case.  The record contains

many examples with the slogan, but also some examples without it. *See, e.g.*, (Docs. 69-10 at 13, 14, 15; 69-14).

The record also contains examples where the InvisaSock mark does not appear near the Everything Legwear house mark, and in places where it does appear, it is not as prominent as the InvisaSock mark. *See, e.g.*, (Doc. 69-11 at 2; 69-10 at 14; 69-14). While the consistent presence of a house mark or a slogan would have the "potential" to reduce or eliminate confusion, the Court concludes on this record, drawing inferences in favor of Everything Legwear, that the similarity of the marks is neutral. *See Stuart J. Kaufman, M.D. & Associates, P.A. v. Bausch & Lomb Inc.*, 8:13-cv-461-T-33EAJ, 2013 WL 6154166, at *7 (M.D. Fla. July 25, 2013), *report and recommendation adopted sub nom. Kaufman v. Bausch & Lomb Inc.*, 2013 WL 12123679 (M.D. Fla. Sept. 4, 2013).

<u>Similarity of Goods</u>

The two products, while different in some respects, are sufficiently similar to create an issue as to whether the parties' respective goods are "so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *Fla. Int'l Univ.*, 830 F.3d at 1261 (quoting *Frehling Enters.*, 192 F.3d at 1338). This factor favors a likelihood of confusion.

<u>Similarity of Channels of Trade and Customers</u>

The parties sell through separate websites, and Everything Legwear also sells through Amazon and bricks and mortar retail outlets. The use of different websites tends to cut against likelihood of confusion. *See Tana,* 611 F.3d at 78

(noting that separate and distinct websites suggests "two completely unrelated business entities"); *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 91 F. Supp. 3d 1265, 1280 (S.D. Fla. 2015) (stating that the fact that both universities advertised on their own respective websites, in addition to several other media sources, made it more likely consumers would believe that the two schools were "distinct enterprises"), *aff'd*, 830 F.3d 1242 (11th Cir. 2016).

Invisasox appears to target as customers men and women in search of "no-show" socks for various purposes.  From the examples offered, Everything Legwear's marketing appears more directed to women, as evidenced by the slogan "Sexy and Invisible Comfort" and by its trademark registration referring to "women's dress shoes."  At the same time, Everything Legwear points to examples of its product advertising featuring other types of shoes as well.  *See* (Docs. 75 at 12; 75-15; 75-16).  There would appear to be some overlap in customers, but the degree of overlap is uncertain.  Drawing all inferences in Everything Legwear's favor for purposes of Invisasox's motion for summary judgment, the Court concludes this factor is neutral or somewhat favors Everything Legwear.

<u>Similarity of Advertising</u>

Everything Legwear advertises its products under the InvisaSock brand on Facebook, Instagram, Pinterest, and Twitter.  (Docs. 75-12 at 3; 75-14 at 125, 152, 157-58).  Invisasox advertises on Facebook, Instagram, Pinterest, and Twitter, but also on other internet media.  (Doc. 75-7 at 19-21).  The Court concludes that this

partial overlap of advertising methods weighs somewhat in favor of likelihood of confusion.

Intent

In a forward confusion case, evidence that the alleged infringer adopted its mark "with the intention of deriving a benefit from the [trademark holder's] business reputation . . . may be enough to justify the inference that there is confusing similarity." *Fla. Int'l Univ.*, 830 F.3d at 1263. It is unclear whether the alleged infringer's intent plays a role in a reverse confusion case. *See Stuart J. Kaufman, M.D. & Associates, P.A.*, 2013 WL 6154166, at *9. Some courts look to whether the alleged infringer acted carelessly (disregarding the risk of reverse confusion), while others focus on whether the alleged infringer intended to overwhelm the senior user's mark and appropriate the value of the mark to itself. *Id.*; *Wreal, LLC*, 2019 WL 3890320, at *22 (same); *see also Marketquest Group, Inc. v. BIC Corp.*, 862 F.3d 927, 934-35 (9th Cir. 2017) (noting that intent could by shown by evidence the junior user "knew of the mark, should have known of the mark, intended to copy the plaintiff, failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded the risk of reverse confusion.").

Everything Legwear has submitted evidence raising an issue of fact as to the knowledge and intent of Invisasox in adopting and using its mark. Invisasox CEO Matthew Otengco testified that he learned of the InvisaSock mark and visited the invisasock.com website prior to the launch of the INVISASOX brand in 2016. (Doc.

75-7 at 14-15, 45, 47-48, 50-54, 58, 64-68). As discussed above, both companies sell no-show hosiery and INVISASOX has a similar sound and shares most of its letters with InvisaSock. Otengco nevertheless asserts that he believed there was no risk of confusion because it was a "different name and a different product" and the invisasock.com site had links that did not work and the "wrong" copyright year at the bottom, from which he concluded the site had been "abandoned." (Doc. 75-7 at 63).

The copyright date on the site in 2016, however, was 2015, only one year earlier, and Everything Legwear also sold its products through other outlets. (Doc. 75-11 at 2, 7-8; Doc. 75-24 ¶ 13). The record also contains evidence of at least some internet sales in 2016, and it was in 2016 that Everything Legwear stopped using invisasock.com and moved the InvisaSock brand to its own website. (Docs. 60; 75-14 at 93-94). It is therefore unclear during what time frames and to what extent the invisasock.com site was, in fact, non-functioning during 2016, and the jury is entitled to assess the credibility of Otengco's testimony.

The jury could in that regard also take into account the fact that, while Otengco now says he was unaware of the federal registration for InvisaSock until 2018, the invisasock.com website in 2016 stated the mark was federally registered, and Invisasox originally admitted that it was aware of the federal registration when it adopted its mark. (Docs. 75-7 at 45-49; 75-11 at 1).[3] Otengco also obtained key

---

[3] If Inivsasox successfully moves to amend this admission, it would remain admissible as evidence, even if no longer conclusively binding. *See Tucker v. Hous. Auth. of the Birmingham Dist.*, 229 F. App'x 820, 826 (11th Cir. 2007) (holding that pleadings superseded by amendment "are admissible as

word search terms from Google that would return search results whenever "invisa-" was entered, which could send potential customers searching for Everything Legwear's InvisaSock product to Invisasox's product instead. (Doc. 75-7 at 78-85, 85-90). He asserts he did not realize this at the time and changed it when it was called to his attention. (*Id.* at 90).

This evidence, while hardly compelling, creates an issue of fact on Inivsasox's knowledge and intent that a jury could resolve in favor of Everything Legwear. Drawing all inferences in favor of Everything Legwear, the Court concludes that this factor is neutral or cuts somewhat in favor of a likelihood of confusion.

<u>Conclusion as to Likelihood of Confusion</u>

As the Court ruled in its Order on Everything Legwear's motion for summary judgment, of the two most important issues – strength of the mark and actual confusion – one weighs in favor of likelihood of confusion, and the other weighs against it. Of the other factors, drawing all inferences in favor of Everything Legwear as the nonmovant, the Court concludes they are neutral or favor Everything Legwear to an extent. On the overall balance, a trial is necessary to weigh the factors and determine whether an "appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the

---

admissions of the pleading party to the facts alleged therein.") (internal quotation omitted); 8B *Fed. Prac. & Proc. Civ.* § 2264 (3d ed) ("There would be reason to hold that an express admission [under Rule 36], later withdrawn, should be treated in the same fashion as a pleading . . . .").

source of the goods in question." *Custom Mfg.*, 508 F.3d at 650-51. Accordingly, summary judgment must be denied.

### *Dilution*

Trademark dilution occurs "where the trademark is blurred by the junior use or where the junior use damages the good associations originally attributed to the senior user." *Provide Commerce, Inc. v. Preferred Commerce, Inc.,* No. 07-80185 CIV, 2008 WL 926777, at *4 (S.D. Fla. Apr. 4, 2008). To prove its claim of dilution, Everything Legwear must provide sufficient evidence that: (1) the InvisaSock mark is famous; (2) Invisasox adopted its mark after the InvisaSock mark became famous; (3) Invisasox diluted the mark; and (4) Invisasox's use is commercial and in commerce. *Health & Sun Research, Inc. v. Sunless, Inc.*, No. 8:14-cv-466-T-35MAP, 2014 WL 12609861, at *3 (M.D. Fla. Oct. 14, 2014); 15 U.S.C. § 1125(c). Invisasox argues that Everything Legwear's mark does not qualify as "famous."

A mark is considered famous only "if it is widely recognized *by the general consuming public* of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). Everything Legwear points to its federal registration and evidence of substantial sales since 2011, even though sales dropped off sharply after 2014.

Even if Everything Legwear's mark were well known in its market, that would not be enough to make it famous. *See, e.g., Provide Commerce,* 2008 WL 926777, at *5 ("Even if a mark is distinctive in its particular market, it does not render it inherently distinctive so as to engender immediate recognition in the

general public of a particular product.") (internal quotation omitted). The "famous" category is reserved for marks that are "truly prominent and renowned." *Holding Co. of the Villages, Inc. v. Little John's Movers & Storage, Inc.*, 5:17-cv-187-Oc-34PRL, 2017 WL 6319549, at *4 (M.D. Fla. Dec. 11, 2017) (internal quotation omitted). In other words, the mark must be "practically a household name, of the likes of such giants of branding as Exxon, Kodak, and Coca-Cola." *Id.*; *see also Provide Commerce, Inc.* 2008 WL 926777, at *5 ("Examples of famous marks include Exxon, Kodak, Coca-Cola, Pepsi, Buick, Wal-Mart, DuPont and Budweiser."). The InvisaSock mark is not in that category. *See, e.g., Provide Commerce, Inc.*, 2008 WL 926777, at *5 (holding that even national advertising efforts and large customer base were "not enough to meet the rigorous dilution standard."). Invisasox's motion for summary judgment will therefore be granted as to Count III.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Plaintiff/Counter-Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 69)" is **GRANTED IN PART** and **DENIED IN PART.**

(2) The motion is **GRANTED** to the extent that summary judgment shall be entered in favor of Plaintiff Invisasox, LLC, and against Defendants Everything Legwear, LLC and Frannie Girl Products, Inc. as to Count III of their counterclaim. The Court will enter a final judgment once all claims have been resolved.

(3) The motion is otherwise **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 16th day of October, 2020.

*/s/ Tom Barber/*

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**